IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COUNCIL ROCK SCHOOL DISTRICT,** : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION** |
| v. : | **NO. 09-5604** |
| : | |
| **THOMAS BOLICK, II, ET AL.,** : | |
| **Defendants.** : | |

**MEMORANDUM**

**Tucker, J.** December____, 2010

      Presently before this Court is Plaintiff Council Rock School District's Motion for Judgment on the Administrative Record (Doc. 27); Defendants' Thomas Bolick, II and Thomas Bolick, III Response in Opposition thereto (Doc. 32); Defendants' Motion for Summary Judgment (Doc. 29); Plaintiff's Response in Opposition thereto (Doc. 30) and Defendants' Motion for Leave to Reply to Plaintiff's Response (Doc. 33). This Court has thoroughly reviewed the administrative record, and for the reasons set forth below, this Court denies Defendants' Motion for Summary Judgment which the Court has construed as a Motion for Judgment on the Administrative Record. In addition, this Court denies Defendant's Motion For Leave to Reply. This Court grants Plaintiff's Motion for Judgment on the Administrative Record. Specifically, the Court will overrule the Hearing Officer's decision to the extent it found that Plaintiff's initial evaluation inappropriate and awarded Defendants the cost of the Independent Education Evaluation.

## I. INTRODUCTION

      This case concerns the education of Thomas Bolick, III ("the Student"), who is currently enrolled at Pennsylvania State University, Ambler campus. (Admin. R. Ex. 4 at 3.) The instant action was brought by Plaintiff, Council Rock School District ("the District" or "Plaintiff") against Thomas Bolick, II ("Parent") and Thomas Bolick, III ("the Student") (collectively, "the Bolicks" or "Defendants"), pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. §1400, <u>et seq.</u>, ("IDEA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section

504"). The District seeks review of the Hearing Officer's decision. Specifically, Plaintiff seeks review to the extent that the Hearing Officer found the initial evaluation inappropriate and awarded Defendants the cost of the Independent Education Evaluation. In its prayer for relief, Plaintiff requests that this Court issue an order declaring that the District is not required to reimburse Defendants for the private evaluation and finding that the initial evaluate was appropriate in accordance with the IDEA.

## II. FACTUAL BACKGROUND

Thomas Bolick, III attended Council Rock High School North in the Council Rock School District until June of 2008. (Admin. R. Ex. 4 at 3.) While enrolled in Council Rock High School the Student was an above-average student. (Findings of Facts, No. 2) On or about January, 2006, Parent requested that the District evaluate the Student to determine whether the Student was eligible to receive special education services under Section 504 of the Rehabilitation Act.[1] "At [this] time, the Student was taking mostly accelerated academic classes, and was earning average grades; " however, Parent described the Student as having "impaired sensory, manual or speaking skills." (Admin. R. Ex. 2 at 2,4.)

Pursuant to this request, on May 22, 2006, Tammy Cook, a certified school psychologist, evaluated the Student on behalf of the District. At this time the Student was in the tenth grade. (Findings of Facts, No. 6) In her Initial Evaluation Report, Cook determined that "there were no indicators that [the] Student ha[d]... a learning disability or was a child in need of special education." (Findings of Facts, No. 8) Cook's determination relied in part on the Student's above-average score on the Reading Comprehension section of the Wechsler Individual Achievement Test,

---

[1] In support of Parent's request to have the Student evaluated Parent reported that the Student had been diagnosed with a "hidden" specific learning disability. In his January 13, 2006 written request Parent stated "I base this consideration on points: (1) His sister, Amy Bolick, for instance is an "A" student where Thomas was also several years ago and has since fallen steadily. He has a "hidden disability" limiting his communication skills.'" According to Parent said hidden disability caused Student to experience difficulty in his course work particularly, his Spanish language class. Further Parent reported that the Student was struggling with completing his homework and assignments.(Admin. R. Ex. 4 at 3.) According to Parent, the Student received a dog bite which has rendered him afraid of learning.

Second Edition ("WIAT").² The WIAT assessed the Student's cognition versus his achievement in a standardized format. (Compl. ¶27) The Student's performance on the WIAT suggested that he was able to read materials that were on a post-high school level of difficulty. (Findings of Facts, No. 9) In addition to the cognitive assessment, Cook also administered the Behavior Assessment System for Children Test, Second Edition ("BASC") to measure his emotional stability. In performing this test, Cook sought behavior ratings from the Student's teachers and parents. The Student's teachers indicated some "at risk" concerns in the areas of social skills, leadership skills and study skills, however, Cook found no significant issues. (Findings of Facts, No.11) The Student's parents neglected to complete the rating scales. (Findings of Facts, No.11) Upon completion of the evaluation report Cook invited the Student's parents to discuss her findings, however, they failed to respond or submit a rebuttal to her conclusions. (Findings of Facts, No.12)

In January and February of 2007, when the Student was in eleventh grade his Parent obtained an Independent Educational Evaluation ("IEE"). (Findings of Facts, No.13) This evaluation which was conducted by Kristen Herzel, PhD, recommended *inter alia* that his Parent consider having Student classified as having a Specific Learning Disability ("SLD") in the area of reading comprehension.³ (Admin. Record, Ex. 2 at 2.) In assessing Student's cognitive abilities, Dr. Herzel administered the Grey Oral Reading Test ("GORT") and Nelson-Denny test. Dr. Herzel concluded that the Student's reading comprehension was poor based on his performance on both

---

² Cook also administered the Wechsler Intelligence Scale for Children Fourth Edition (WISC). Students scores on the test are as follows:
Verbal Comprehension: 98
Perceptual Reasoning: 110
Working Memory: 113
Processing Speed: 106
Full Scale IQ: 108

³ Dr. Herzel evaluated the Student on two occasions for a total of six hours and also observed him at school. (Findings of Facts, No. 13 n 9). Dr. Herzel's IEE also recommended the following: (1) Participation in honors and accelerated courses can [be] expected to present a challenge to Student. He will feel more comfortable with the levels of expectation in mainstream educational program; ...(3) Suggestion that Student not take a foreign language next year, but spend the time in a learning support reading program instead. Interventions should focus on teaching Student reading comprehension strategies and study strategies; (4) Study skills instruction in note taking and study skills; (5)Private tutoring and reading comprehension strategies; (6) Suggestion that student become proficient at using a laptop for note taking in the classroom; (7) Monitor Student's emotional status, as he may be experiencing emotional symptoms that he is unwilling to discuss. The symptoms of depression, in particular, should be considered. (Findings of Facts, No. 14)

3

assessments. Dr. Herzel's results regarding the Student's cognitive ability were similar to the results of District's evaluation, in that, both reflected scores in the "High Average" range. (Findings of Facts, No. 15) However, the two evaluations differed significantly with regard to their findings of the Student's reading comprehension ability. "Dr. Herzel found the Student's reading comprehension to be poor, in the borderline range on the Grey Oral Reading Test,...which involved longer passages and did not allow him to refer to passages to answer questions, and at the lower end of the low average range of the Nelson-Denny, which involved briefer passages...." (Findings of Facts, No. 15) Although Dr. Herzel did not contact Cook, the school psychologist who evaluated the Student in 2006, she did not dispute the validity of Cook's findings. (Findings of Facts, No. 13) Subsequently, the Parent submitted the IEE to the District for consideration.

Thomas C. Barnes, Ph.D., the school psychologist for the District's high school, reviewed Dr. Herzel's IEE. Dr. Barnes found Dr. Herzel's evaluation deficient in many respects. Specifically, in critiquing the IEE, Dr. Barnes asserted that in order to make the determination of whether a student had a learning disability, it was necessary to test cognitive ability as well as achievement. (Findings of Facts, No. 16) Moreover, Dr. Barnes considered the tests used by Dr. Herzel to be initial screeners, meaning tests used to determine whether a student required additional testing for a learning disability. (Findings of Facts, No. 16) Consequently, the District reaffirmed its determination that the Student was not eligible for specially designed instruction under IDEA or for accommodations under Section 504. (Admin. R. Ex. 2 at 2-3.)

## II. PROCEDURAL BACKGROUND

### A. Due Process Hearing

On May 26, 2009, Parent filed a complaint with the Office of Dispute Resolution, seeking an impartial due process hearing on whether the District properly evaluated student and, if not, whether the District provided Student a Free Appropriate Public Education (FAPE). Consequently, an administrative hearing was held on July 17, 2009 before a Special Education Hearing Officer ("Hearing Officer") to determine (1) whether the District failed to identify the Student as having a disability under IDEA; and (2) whether the District failed to provide the Student with a FAPE.

In a written decision dated September 4, 2009, the Hearing Officer concluded as follows: (1) the District's initial evaluation was inappropriate, but the re-evaluation report corrected the major flaws in the Initial Evaluation Report; (2) the Student did not qualify for specially designed instruction under the IDEA or Section 504 accommodations; (3) the District properly considered the IEE; and (4) the District did not deny the Student a FAPE. (Admin. R. Ex. 2 Special Educ. Hr'g Officer Decision at 3)

In addition to the above findings the Hearing Officer also opined on Dr. Herzel's findings. Specifically, the Hearing Officer found that Dr. Herzel's IEE contained significant shortcomings, for example, Dr. Herzel failed to adequately consider the difference between the Student's GORT and Nelson-Denny scores and his WIAT and PSSA scores.[4] (Admin. R. Ex. 2 at 8.) The Hearing Officer further noted that Herzel's IEE failed to take into account the fact that the Student made meaningful progress in school without specially designed instruction. (Admin. R. Ex. 2 at 8.)

With respect to the District's initial evaluation the Hearing Officer found that the District's Initial Report was deficient in the following respects: (1) there were issues of credibility with regard to Cook's testimony of the timeliness of the Initial Evaluation Report and the whereabouts of the Permission to Evaluate Letter; (2) there were issues of credibility as to the testimony of Joe DeMaio, the Student's guidance counselor with regard to statements allegedly made by Dr. Herzel during her observation of the Student at school; (3) the District's evaluation provided little to no interpretation of the Student's scores or how they related to the conclusion that he was neither a child with a disability nor a child with a disability who did not need specially designed instruction; (4) the District's evaluation lacked any explanation of the significance of the Student's teachers finding the Student to be "at risk" in the areas of attention, adaptability, social skills, leadership skills and study skills; (5) the District's evaluation failed to explain or correlate the information about the Student's emotional stability with her determination that the Student was not eligible for special education service and specially designed instruction under IDEA and (6) the District failed to evaluate the Student for Section 504 accommodations. (Admin. R. Ex. 2 Special Educ. Hr'g Officer Decision at 7-9)

---

[4] PSSA refers to the Pennsylvania System of School Assessment. " Student's score on the reading portion of the PSSA was in the "Advanced" range. Bolick v. Council Rock Sch. Dist., 2010 Pa. Commw. Unpub. LEXIS 464*6-7, n.5 (Pa. Commw. Ct. 2010)

5

Despite these findings the Hearing Officer determined that based on the evidence presented, the District properly determined that the Student did not have a learning disability. In fact, the Hearing Officer found the District's deficient evaluation to be a harmless error. However, finding that the District failed to conduct an appropriate initial evaluation the Hearing Officer concluded that the Parent was entitled to be reimbursed for the cost of the IEE obtained.

### B. Commonwealth Court Action

Following the Hearing Officer's decision, the Parent filed an appeal with the Pennsylvania Commonwealth Court contesting the Hearing Officer's decision to the extent it concluded that the Student did not have a learning disability and had been receiving a Free Appropriate Public Education ("FAPE"). On July 23, 2010, the Commonwealth Court affirmed the Hearing Officer's decision. The Parent then filed a complaint initiating an action in the Court of Common Pleas of Bucks County raising many of the same claims put forth in the due process hearing. On November 24, 2009, the District initiated the instant action. The District seeks review on the issue upon which it did not prevail at the administrative hearing, namely the appropriateness of the initial evaluation and the decision awarding Defendants the cost of the IEE.

Defendants have filed a Motion for Summary Judgment arguing that the instant action is precluded by the Rooker Feldman Doctrine and the doctrines of res judicata and collateral estoppel. Defendants' arguments are inappropriate as a motion for summary judgment. Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir.2008). Defendants are effectively seeking judgment on the administrative agency's record. "Because the IDEA requires a district court to grant a judgment on the record based on its own ascertainment of the preponderance of the evidence, many IDEA claims do not fit into the typical summary judgment standard of 'no genuine issues of material fact." L.B. v. Nebo Sch. Dist., 379 F.3d 966, 974 (10th Cir. 2004) Although a party may seek judicial review of an administrative agency's decision by way of a summary judgment motion under the IDEA, "it is not a true summary judgment procedure. Instead, the district court essentially conduct[s] a bench trial based on a stipulated record." Ojai Unified Sch. Dist. v. Jackson, 4 F.3d

1467, 1472 (9th Cir. 1993); see also Heather S. by Kathy S. v. State of Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997) ("when there is no new evidence presented to the district court, as in this case, 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'"); Doe v. Metropolitan Nashville Public Schools, 133 F.3d 384, 387 n.2 (6th Cir. 1998) (noting that when no additional evidence is taken, a district court may "decide the case based on the record" but explaining that referring to such a case as summary judgment confuses matters.).

### III. LEGAL STANDARD

#### A. Judgment on the Administrative Record

Civil actions brought pursuant to the IDEA require a standard of review for summary judgment that differs from the traditional inquiry into genuine issues of material fact. Rather, the Third Circuit has held that when reviewing IDEA cases, district courts conduct a modified de novo review. S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003); see also Mary Courtney T. v. Sch. Dist., 575 F.3d 235 (3d Cir. Pa. 2009) (noting "[w]e require a district court to apply a nontraditional standard of review when considering an appeal from a state administrative decision under IDEA.") Id. at 241. "Judicial review in IDEA cases differs substantively from judicial review in other agency actions, in which the courts are generally confined to the administrative record and are held to a highly deferential standard of review." Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 757 (3d Cir. 1995); (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir.1993)).

In conducting a modified de novo review, district courts (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(B). District courts shall accord due weight to the factual findings of the administrative agency. S.H.,336 F.3d at 269. Thus, when reviewing an administrative proceeding in an IDEA case, the district court should "defer to the hearing officer's factual findings," unless it can point to contrary non-testimonial extrinsic evidence in the record. Carlisle Area Sch. v. Scott P. by & Through Bess P., 62 F.3d 520, 529 (3d Cir. 1995). Under this modified de novo review, the factual findings made in the administrative process are to be

7

considered prima facie correct. "[A]lthough the district courts 'must consider the administrative findings of fact, [they are] free to accept or reject them.'" Carlisle Area Sch., 62 F.3d at 527. (citations omitted) Should the Court choose not to accept these factual finding it is obliged to explain why. Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir.2004) (quoting S.H., 336 F.3d at 271). District Courts are cautioned, however, not to substitute their own notions of sound educational policy for those of the local school authorities which they review.." Susan N., 70 F.3d at 757. (citing Bd. Of Educ. V. Rowley, 458 U.S. 176, 205-206.

### III. DISCUSSION

A.  IDEA

Congress enacted the IDEA

> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[, and] . . . to ensure that the rights of children with disabilities and parents of such children are protected

20 U.S.C. §§ 1400(d)(1)(A) and (B) (2008).

IDEA requires that a state receiving federal education funding provide a FAPE to children having a disability. 20 U.S.C. § 1412(a)(1). "The Act defines a [FAPE]... as educational instruction 'specially designed . . . to meet the unique needs of a child with a disability,' § 1401(29), coupled with any additional 'related services' that are 'required to assist a child with a disability to benefit from [that instruction.]' § 1401(26)(A)." Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 524 (U.S. 2007) Should a dispute arise as to a student's education, the IDEA provides for an "impartial due process hearing," where a hearing officer makes a "determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(1)(A), (f)(3)(E)(I). The decision of the hearing officer may subsequently be appealed to an administrative appeals panel. Id. § 1415(g). The Act permits "any party aggrieved by the findings and decision" of the state appellate procedure to "bring a civil action

with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." Id. at § 1415 (e)(2). In such an action, the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. Id. at § 1415(i)(2)(C).

### B. Plaintiff's Motion for Judgment on the Administrative Record

Plaintiff advances two arguments in support of its Motion for Judgment on the Administrative Record. First, Plaintiff argues that the Hearing Officer erred in determining that the District improperly evaluated Student. Second, Plaintiff argues that assuming that the District improperly evaluated the Student, the Parent is not entitled to reimbursement for the IEE costs because the IEE was inappropriate.

The IDEA imposes an affirmative obligation on school authorities to identify and evaluate children with disabilities. See 34 C.F.R. § 300.320(a)(1)-(2). Specifically, the Act mandates that a "State educational agency, other State agency, or local educational agency shall conduct a full and individual initial evaluation... before the initial provision of special education and related services to a child with a disability.... 20 U.S.C. § 1414(a)(1)(A) Nonetheless, the Act also provides that a parent has the right to obtain an IEE at public expense if the parent meets the following three criteria: (1) the parent disagrees with the District's evaluation report; (2) the District's evaluation report is deemed to be inappropriate; and (3) the Independent Educational Evaluation is deemed appropriate. See 20 U.S.C. § 1415(b)(1); 34 C.F.R. §300.502(b).

C.  **Sufficiency of Initial Evaluation**

This Court is mindful that it is required to give due weight to the factual findings of the Hearing Officer absent the existence of contrary non-testimonial extrinsic evidence S.H., 336 F.3d 260 at 269. In the instant action, the Hearing Officer found a number of deficiencies in the District's initial evaluation. IDEA's implementing regulations require that "[i]n evaluating each child with a disability . . . the evaluation [must be] sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified." 34 C.F.R. 300.304(c)(6); see also 20 U.S.C. § 1414 (b) (2) Requiring that

> In conducting the evaluation, the local educational agency shall–
>
> (A) use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining-
>
> (i) whether the child is a child with a disability;....

20 U.S.C. § 1414 (b) (2).

After a review of the District's Initial Evaluation Report, the Hearing Officer found that the District appropriately concluded that the Student was not a child with a disability. In addition, the Hearing Officer also concluded that the Student had been receiving a FAPE in accordance with the IDEA. However, the Hearing Officer concluded *inter alia* that the report contained little to no analysis of the significance of Student's test scores. (Admin. R. Ex. 2 Special Educ. Hr'g Officer Decision at 13.) The Hearing Officer specifically noted that there was "no explanation of the significance, if any, of Student's standard score in Pseudo word Decoding on the WIAT-II being noticeably lower than his scores in Comprehension and Word Reading." (Admin. R. Ex. 2 Special Educ. Hr'g Officer Decision at 13.) Additionally, the

evaluation lacked any "explanation of the significance of [the] Student's teachers finding [the] Student to be 'at risk' in the areas of attention, adaptability, social skills, leadership skills and study skills." (Admin. R. Ex. 2 Special Educ. Hr'g Officer Decision at 13-14.)

The IDEA and its regulations establish a comprehensive method by which a child must be evaluated to determine whether he or she has a disability and, if so, whether he or she is in need of special education. The Act requires that the evaluation be conducted with proper assessment tools and by qualified individuals. See 20 U.S.C. § 1414. In addition, the evaluation must be sufficiently comprehensive to identify all of the child's special education and related service needs. 34 C.F.R. § 300.304(b). Moreover, in performing the evaluation, the student must be assessed in all areas related to the suspected disability. 34 C.F.R. § 300.304(c)(4) Here, in accordance with section 1414 of the Act, the evaluation was conducted by Cook, a certified school psychologist. Further, the evaluation utilized a variety of tests and assessment tools, including cognitive ability tests, school records, social-emotional assessments, information from teacher reports and behavior rating scales completed by teachers. The Student's past report cards and PSSA scores were analyzed and found to indicate not only no educational deficiencies, but often above-average performance. While the District's report could have included more detail with regard to analysis, it was not required by law to do so.

Cook administered the WISC, Fourth Edition to test intellectual functioning with questions in the areas of verbal comprehension, perceptual reasoning, working memory, and processing speed. All but one of the Student's subtest scores indicated that the Student was in the average range; two subtest scores indicated above-average performance. The Student's achievement was tested using the WIAT, Second Edition, which tested his achievement in the

11

areas of word reading, comprehension, pseudoword decoding, numerical operations, and math reasoning. The Student's reading comprehension and math composite test scores indicated above-average achievement. Finally, a psycho-emotional assessment was conducted using the BASC, Second Edition. The behavior rating forms were completed by three of the Student's teachers, who indicated there were areas of concern, however, Cook did not find that said issues were severe enough to require formal treatment. In sum, in accordance with the Code of Federal Regulations all areas related to the suspected disability, including *inter alia*, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities were tested and used to determine that the Student did not qualify as having a learning disability requiring special educational services. 34 C.F.R § 300.304(c)(4).

This Court finds that the Hearing Officer erred in determining that the District's initial evaluation was inappropriate. In concluding that the evaluation was faulty the Hearing officer cited to 20, U.S.C. § 1414(b)- (c); 34 C.F.R §§ 300.12, 500 (b)(2), 532-536 and 22 Pa. Code § 14.123. This Court disagrees with the Hearing Officer's analysis of these statutes. Not one of the statutes cited requires the District to include an explanation of the results of each test administered. Additionally, the Hearing Officer noted that the District's initial evaluation was devoid of consideration of the criteria which established that Student did not demonstrate a need for special education services. Nonetheless, the Hearing Officer noted that "a review of the record both documentary and testimonial, does establish that the Student did not meet the criteria for a specific learning disability." ( Admin. R. Ex. 2 at 17.) The Hearing Officer also opined on the credibility of Joe DeMaio, the Student's former guidance counselor and Cook, the psychologist that administered the evaluation. Again, this Court is mindful that it is

required to give due weight to both the factual findings and the credibility determinations of the Hearing Officer. However, this Court concludes that the credibility issues found by the Hearing Officer were not so severe as to render the evaluation inappropriate.[5] Finding that the District's initial evaluation was appropriate this Court declines to address Plaintiff's second argument that the IEE was inappropriate.

In their brief in opposition to Plaintiff's Motion for Judgment on the Administrative Record, Defendants argue that the instant action is barred by the Rooker-Feldman doctrine. To support this contention, Defendants state that "Plaintiff seeks judicial declarations concerning purported errors on the part of the administrative Hearing Officer whose order has been affirmed in its **entirety** by a state court. (Def.'s Br. in Opp'n at 3)(emphasis added) As a general matter, the Rooker-Feldman doctrine prevents district courts from "sit[ting] in direct review of the decisions of a state tribunal" because Congress has conferred jurisdiction to review a state court's decision only on the Supreme Court. See Exxon Mobil Corp. et al. v. Saudi Basic Industries Corp., 364 F.3d 102, 104 (3d Cir. 2004). The Supreme Court, however, has cautioned lower federal courts that the Rooker-Feldman doctrine is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006). The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting review and rejection of those judgments." Exxon Mobil Corp., 544

---

[5] The Hearing Officer noted that "the school psychologist, Ms. C was less forthcoming and credible when she testified as to the whereabouts of the January 13, 2006 letter or the Permission to Evaluate (hereinafter "PTE")... from the Parent requesting an evaluation for 504 services even though she did reference the letter but not its content in the ER." With regard to Mr. DeMaio, the Hearing Officer noted that "Mr. D, the school guidance counselor gave credible testimony about his part in facilitating the Parent's request. However, his statement regarding Dr. H's alleged comment to him when he was accompanying her during her observation of the Student at school, lessened his credibility slightly. ( Admin. R. Ex. 2 at 8.)

U.S. 280 at 284. Thus, the doctrine only applies in the "limited circumstances" in which a "losing party in state court files suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. at 291. The Rooker-Feldman doctrine has no applicability where, as in the instant case, Congress has expressly authorized the district courts to review the decisions of state agencies. 20 U.S.C. §1414(i)(2)(a). Moreover, Plaintiff's action was not filed in response to losing in a state court; in fact, Plaintiff initiated the instant action before the Commonwealth Court's decision was rendered. Therefore, this Court declines to find that Plaintiff is precluded from bringing the instant action by the Rooker Feldman Doctrine.

Turning to Defendants' second argument, Defendants argue that the instant action is precluded by the doctrines of res judicata and/or collateral estoppel. In support of this assertion, Defendants state that "[on] July 23, 2010, the Pennsylvania Supreme Commonwealth Court affirmed the [Hearing Officer's] order dated September 4, 2009." (Def.'s Br. in Opp'n at 2) Defendants' argument is inaccurate. Res judicata "is an affirmative defense and not a doctrine which would defeat the subject matter jurisdiction of this court." Ryocline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir.1997) (internal citations omitted). In general, res judicata precludes parties and their privies to a suit from relitigating matters that have already been resolved on the merits by a court of competent jurisdiction. See Allen v. McCurry, 449 U.S. 90, 94 (1980) Res judicata applies to both claims that were actually brought in addition to claims which could have been brought in the prior action. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981). The three prong test for the application of res judicata requires "(1) a final judgment on the merits in

14

a prior suit involving (2) the same claim and (3) the same parties or their privies." EEOC v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990). Defendant cannot establish the second element of this test. The issue that Plaintiff's complaint addresses—repaying the costs of Defendant's IEE—was not brought before the Commonwealth Court on appeal. The sole issue before the Commonwealth Court was whether the Hearing Officer erred in "denying Parent's request for compensatory education services for his son, Thomas Bolick III (Student)." Bolick v. Council Rock Sch. Dist., 2010 Pa. Commw. Unpub. LEXIS 464 *1 (Pa. Commw. Ct. 2010) Accordingly, this Court dismisses Defendant's argument that the instant action is precluded by the doctrine of res judicata.

Accordingly, the Court will grant Plaintiff's Motion for Judgment on the Administrative Record to the extent that it overturns the Hearing Officer's decision finding the District's initial evaluation inappropriate and awarding the cost of the IEE to Defendant. This Court denies Defendants' Motion for Summary Judgment which this Court has construed as Judgment on the Administrative Record. Finally, this court denies Defendants' Motion For Leave to Reply.

**BY THE COURT:**

**/s/ Petrese B. Tucker**
**_____**
**Hon. Petrese B. Tucker, U.S.D.J.**